Good morning. May it please the Court, Caroline Olson on behalf of the State Appellants. I'd like to reserve two minutes for rebuttal. For over 150 years, Congress has always provided a deduction for state and local property and income taxes. Congress has maintained the fiscal deficit and changing political parties, and has done so based on the understanding that the deduction is necessary to protect the state's sovereign authority to determine how to raise revenue and how to invest in their own residents, businesses, and infrastructure. Over the years, Congress fiddled with the deduction, and isn't this another fiddling with the deduction? This is the first direct cap on the SALT deduction, and that has constitutional significance because of the inherent link between the deduction and the price of state and local taxes. It is undisputed that capping the deduction increases the cost of state and local taxes, and that's true in a way that past tinkering and incidental limitations on the deduction just haven't been. They have not gone to the effective or marginal value of the deduction in the same way. And just to put that in context, what is an incidental cap? Incidental caps is something that doesn't affect the marginal value of the deduction, and to put this in context, past broad-based tax increases from the federal government when combined with state taxes have resulted in at most an increase in the effective marginal tax rate of New York residents in the order of magnitude of 3 to 4 percent. The SALT deduction cap at $10,000 led to a 12 percent increase in the effective tax rate on individuals who the effect of a direct cap is just significantly more substantial on the cost. It's a matter of degree. I guess the question is, it's a matter of degree, so 3 percent as opposed to 12 percent in terms of the marginal effect. But it's not a matter of prohibition as opposed to degree. Well, this gets pretty close to something that is confiscatory. If you look at the state's pay, the average SALT deduction for the 3.3 million New Yorkers, for example, was over $21,000. And for individuals who pay over $200,000, the average state and local taxes is $85,000. So this $10,000 cap is not a sort of a marginal or de minimis limitation on the value of the SALT deduction. It really goes to the heart of the deduction. And that's why it was put in place. If you go back to the history starting in the Civil War, the drafters of the initial income tax deduction talked in terms of necessity when they described why they put the deduction in place. If you look, for example, at the statements of House and Ways Committee member Morrill, he said this is a question of necessity for the states. The federal and state orbits of taxation must not be conflicting. There has to be protection for the states. So obviously there's no text in the Constitution that you're relying on. Could you just clarify the theory? Is it just that this is the way it's been for 150 years? What is the theory behind this, behind the state's argument? So we have two distinct theories. I'll start with the historical theory. As you noted, there is 150 years of consistent practice. As the Supreme Court has said repeatedly, there's nothing unusual. In fact, it's paramount that you interpret the constitutional provisions in light of historical understanding and practice. That's, for example, what the court did in Prince. It says there's no text on point that says that the federal government cannot conscript local law enforcement officers. But looking back at the history from the founding, there had been no such conscription. And that was persuasive and powerful evidence that the federal government lacked that power. You have a very compelling history here where for over 150 years, Congress has not exercised that power. It has not exercised that power, despite what would otherwise be a very, very attractive power for it. The first time the federal government enacted the income tax, it did so on a blank slate and it said we have to provide this deduction. It desperately needed funds to survive a civil war. And the fact that it chose not to exercise this power without providing a deduction is powerful evidence that it was required. The argument is that because it's done it for so long, it would be unconstitutional for Congress to take it away? Is it that simple? What it is that I think what it the argument is that the power, the congressional income tax power has to be interpreted in light of historic history and practice. And it's not just that this has been done as a matter of practice. The evidence also is. That is just a factor. That is a data point. And that is a very important data point. And it goes beyond mere practice here. It goes to at the Civil War, when describing why the deduction was put in place, Congress talked in terms of necessity. If you go fast forward then to the 1986 debates, when Congress rejected another attempt to alter the income and property tax deduction. Senator Moynihan spoke in terms of this being the this capping the deduction being a would fundamentally alter the federalism balance between the states and the federal government. A sense of the Senate amendment was passed describing it as literally a cornerstone of federalism. And so and then the Senate and the House changed their minds because the American people spoke. And so all of and I understand what you're saying and the importance of this. But what I'm troubled by with respect to your argument is that it seems to by the Supreme Court about the plenary power of Congress in connection with the its power to lay and collect taxes under the Constitution. It has told us that that power knows no restriction except where one is expressed in or arises from the Constitution as Judge Chin I think alluded to. And then you've got South Carolina v. Baker in which the court rejected the claim that Congress had overstepped its constitutional authority when it eliminated a very long-standing federal tax exemption for interest earned. Even in that case which was a long-standing practice and I very much appreciate the importance of that. When it comes to taxes the Supreme Court tells us unless there is something explicit in the Constitution that stops Congress and the executive from passing a law a plenary law in the tax area we're gonna we're gonna step out of the way. They can do that. The federal government's tax power is undoubtedly quite broad but the Supreme Court in NFIB in the Stewart case it has repeatedly said that it is not unlimited. Indeed at the time they were articulating the public meaning of that amendment they reassured the states that this is not going to fundamentally alter the balance of power. Look back at every previous act and every proposal for an income tax act and it included that deduction and they assured the states that the amendment was not going to alter that power. What NFIB and the Stewart machine case recognize is that there are implicit limits based on other provisions of the Constitution that limit the federal income tax power. So if for example an exercise of the income tax tower were to violate the Tenth Amendment that is a valid constraint as the court discussed in NFIB. And as our second theory which I'll touch on briefly gets you it violates the Tenth Amendment in a separate way which is that the effect of the salt deduction cap is both coercive and targeted at a handful of disfavored states. The economic fallout of this deduction is severe in addition to raising a net increase in the tax on over a million New Yorkers. It results in a loss of home equity values of 63 billion dollars that will result in a loss of one to three billion dollars of in-state spending could cost the state up to 30,000 jobs. The economic consequences of this deduction are severe and severely infringe on the state's ability and freedom to exercise its own tax policy and that is the heart of why this deduction was put in place. The cases seem to distinguish between encouraging and coercing. You know what is the difference and what do we have here and why? We know that there's a range in Dole for example we know that something that amounted to less than one percent of a state's sort of that a economic pressure that was the equivalent of ten percent of the state's budget that was probably too much and in between what the Supreme Court has said is that you have to look at the individual facts of this case as I've outlined the economic forces here that make it more difficult for the state to maintain its current taxes or raise taxes in the future are extraordinarily powerful and what we have here. What's the percentage here between one percent and ten percent and is it above ten percent? Well I don't have a specific number for you what I have is a couple of things. The first is the unique link between the SALT deduction cap and the cost of state and local taxes. As has been recognized from the Civil War, removing the deduction automatically increases the cost of state taxes and inherently burdens the exercise of that state the state authority but there's also something that differentiates this case from the run of the mill spending clause case or coercive power case which is the targeting of a handful of states. The economic fallout here does not fall uniformly or even close to uniformly across the states. The economic harm is concentrated and makes the... There isn't a suggestion that this was political in the sense of targeting blue states versus red states. Is there? I mean I understood it to be more trying to coerce states that impose high local taxes to lower the local taxes. That's correct. It happens to be that the way that the politics shakes out it happens to be that what are high tax states also tend to be states that have vote more democratic but... Assuming that's the purpose that the purpose of the legislation is to push certain states to lower their taxes is there anything inappropriate about that or unconstitutional about that? When it gets to the level of coercion if the states for example had if they were given a free choice and weren't that would be something different but what we have here violates what the court said is prohibited in NFIB which is that the federal government cannot interfere or direct the way that the states legislate and here what the federal government has intervened and said we unless you lower your taxes and change the way that you invest in your citizens you're going to face significant economic repercussions. Where does the provision say that? It has that effect but doesn't say that. That's an incentive. The way that that message comes across is in two ways. The first is just the level of the this cap that the effects were going to fit most harshly on the plaintiff states. In fact by setting the $10,000 cap at a place where it would cause substantial financial harm to a handful of states and not others that is evidence. I mean I think and maybe you can correct me but I think that the court in Tuszynski distinguished between a tax that may not fall equally or proportionately on each state right so here the blue states are they're getting hit and then other states are not. So long as the tax operates with the same force and effect in every state where you know we're in every state and that's that is the case here. The provisions of the act are due on their face fall equally but the way that this the cap was structured in order to to inflict sort of maximum damage on a handful of states and not others is then bolstered by the evidence that we've cited in the complaint from statements of the individuals who enacted the legislation and also so I guess my question the ultimate question for me is are we not to just look at the statute itself you're asking us to look at the motivations of individual senators and congressmen and so on and the president but here we've got a statute that on its face and look I you know as a policy matter I may agree or disagree with you but on its face the statute seems to be neutral and applies equally and it because of the way the different states have structured their tax policy and it happens to fall unequally and disproportionately on certain states remind me of a french author and I wish I was good enough to to remember the entire quotation but something about the law and its bridges I mean it I'm not saying that that's a legal point here but the notion that it falls equally on those on whom it obviously falls and falls equally on those who it obviously doesn't fall it may not make a constitutional argument but it has a real effect two points your honor the first is for the purposes of our theory of coercion and targeting there's a facial cap that is known to affect a handful of states more than any many others that in and of itself I think is powerful evidence but that's coupled with evidence from statements from the individuals who enacted the legislation and who are responsible for enforcing it that said that this legislation every goal that the one of the purposes of the legislation to what extent to what extent can are we to take those statements they're not in I mean how do we go about taking those statements into account they are evidence that should be that like any other I think statements associated with legislation should be taken into consideration as an indicia of as an indicia of purpose should there be a trial here I mean are you know there are factual questions we do not think that there are factual questions we think as a matter of law the evidence of economic harm is sufficient to support our our theories of coercion and targeting but questions of intent and what the any facial neutrality of the soft deduction cap are only relevant for the purposes of our coercion and economic theory for the purposes of our historical theory it is enough that the historical practice requires the deduction why don't we hear from the United States and you have some time for rebuttal you're the only two cases on on the calendar today so uh I'm I'm being exceedingly generous a red light thank you your honor go ahead generous like good morning everyone I may please the court my name is J.D. Barnett I'm an assistant United States attorney and I represent the government in this case uh this case uh as your honors uh suggested in some of your questioning earlier concerns a policy disagreement masquerading as a constitutional claim plaintiff states would have preferred if congress had enacted a tax law that did not limit the salt deduction and they want the judiciary to throw out that law by inventing a new constitutional limit on the federal legislative authority the court should decline the request the constitution has nothing at all to say about the salt deduction instead congress's right to create and eliminate tax deductions is entirely a matter of legislative policy judgment to the extent that congress wishes to accommodate the state's policy preferences in that is a matter for the political branches but a desire by certain states for a different legislative outcome is not a constitutional matter importantly the district court should not have even opined on the constitutionality of the tax provision at issue that is because the states lack standing to bring this lawsuit because their alleged injury is the locks of tax revenue and the lawsuit is statutorily barred by the anti-injunction act which prevents pre-enforcement lawsuits challenging tax laws such as this one this court should thus affirm the district court's dismissal of this lawsuit so preferably on the ground that the district court lacked jurisdiction to hear it if it decides to reach the constitutional issue why should affirm the district court what is the basis for arguing uh lack of standing given uh the the at least the alleged uh impact uh economic impact on the states the supreme court and this court have recognized a long-standing doctrine the supreme court in wyoming versus oklahoma in this court very recently in xy planning network versus fdc cited in the state's reply brief where a state is ordinarily not entitled to uh challenge to to base its standing in challenging federal action on the loss of tax a very narrow exception to that rule which the supreme court recognized there seemed to be there seemed to be a number of cases where states are litigating these kinds of issues the medicaid case uh south dakota versus dole the state's outstanding in those cases but not in this one uh south dakota versus dole uh i believe uh was was it not a loss of tax revenue for the state but a loss of um among other things uh federal contributions to their medicaid budget uh and uh and and the uh um and the affordable care act case involved uh similarly uh government i'm sorry south dakota versus dole was transportation fund uh affordable care act was medicaid budget this is tax revenues the supreme court and this court have recognized that a state claim that a federal action will impact the economy of a state or will impact the ability of the state to collect taxes or will impact i'm sorry the tax take of a state is insufficient for standing in a way that from a loss of a federal contribution towards the state transportation budget or state but but wyoming seems to uh contradict your standing argument uh it seems to me in that case but why don't you distinguish wyoming because i i think that that makes it pretty clear that um and it's not just tax laws but other laws that uh uh affect its market um uh for a particular product um so wyoming announces a small exception to the general rule that prohibits states from having standing based on law and focused on the exception right and that exception is it in there there the speak back to that case where the state of oklahoma essentially enacted a law saying power plants in oklahoma may not buy uh coal from wyoming and wyoming taxes such sales and so there the effect of the uh action by oklahoma was so direct and so targeted to a specific uh taxable activity in another state that is the argument here but that is not the argument uh that is not correct argument here hear what congress did you don't get to pick you're the defendant you don't get to pick your argument the argument here is exactly that it seems to fit into the exception what the law here did was different what what the law here did is congress enacted as part of a broader tax measure a cap on individual's ability to uh deduct their state and local taxes from their federal income taxes that one may have for some title why don't you move on to the merits i'm particularly interested in hearing your response to the coercion argument in particular whether uh nfib is different from this case nfib is extraordinarily different from this case nfib uh is the emblematic case of where uh without um using the word the state must do something uh the the court the congress directed states to do something a sort of on penalty of as the court supreme court put it a gun to the head so in nfib congress said that unless states expand their medicare programs in the way that congress has specified states would be kicked out of the over 10 to sometimes up to 20 percent of state budgets but the dismantling of of for many states the large part of their health care systems health coverage for millions of their citizens potentially leading to collapse of the health systems in those states themselves it was impossible to conceive of a state saying no to that potential calcium bargain that congress is proposing given the given the impact or at least the alleged impact as articulated by the state why isn't the the salt cap um essentially a gun to the head it's it's nothing like that your honor the in order for the here the salt cap essentially changes as the district court put it the decisional landscape upon which states legislate they can after the enactment of the salt deduction cap and the 2017 tax law keep their tax laws the same they can change them they can raise taxes they can lower taxes there is nothing that compels them and that is i think the relevant word from nfib there is no absolute it is the state the state is arguing that the states are arguing that the cap is coercing them to to lower their local taxes and that's not something that they want to do consistent with their their their their policy goals right and the the test under nfib is is it possible to conceive of a state resisting whatever pressure congress has put on it and choosing to maintain its existing spending and taxation uh policies and in fact it is very easy to conceive of of such states indeed uh i'm not aware of any dramatic change in uh the state the plaintiff state taxing and spending in the over three years since this law was enacted that this is uh precisely the type of thing where federal taxes go up and down federal deductions go away federal policies change various incentives and states are free to react to those things as as they wish or to not react to them at all is there any is there any limiting principle uh to the federal government's ability uh to uh tax and to to affect state tax policies um so long of course as it's a tax uh a federal tax uh that doesn't explicitly uh target you know kentucky or new york or whatever a specific state is there a limiting principle what is that principle if so the limiting principle is one of coercion is is it possible is it possible for the state to say no i would argue that congress has in the past in cases upheld by the supreme court been even more coercive in terms of dictating what states should do with their tax policies and the supreme court has held it in stewart versus and steward machine uh congress enacted a tax on corporations that uh that resided in states that didn't have their own state unemployment programs uh and that did not make contributions to such programs that was an extraordinarily powerful incentive for states that didn't have unemployment programs at the time to enact such programs to save uh their you know unemployment programs you could you could have a you could have a federally devised tax uh uh statute or tax program that um really strongly incentivizes every state to enact a medicaid program for example absolutely as long as the incentive is not so strong that it is impossible for a state to say no that is the line that the supreme court has drawn here so the only question is is it possible to say no or must you do what congress commands and is it is the is the legislation a command in a in a different i mean with respect to federal highway uh spending for example and the increase in the age the drinking age some might say that it was impossible for states to say no just because of the vast amounts of money that they get the supreme court concluded that that was not a sufficient incentive so it's it's impossible it would have been painful for states to forego a percentage of their federal transportation money if they wished to allow college students to continue having their uh their beers on the weekends but most states and perhaps all states ultimately decided that you know the one was more important than the other and so they gave in that is the give and take between congress uh and and the states that is permissible it is only when you know if congress said look you know if you don't raise the drinking age to 21 you're kicked out of the union or all of your residents are taxed at 100 percent or you're you know something so blatantly coercive that it isn't possible to say no to that is the line that may i ask another follow-up question um because i am interested in the historical argument let's just say and understanding what the government's position is with respect to this uh much of the argument rests on events that occurred uh around the civil war but let's say that uh this um antipathy towards the this a cap of the sort that we have here uh was expressed starting from the founding so 1791 and very strongly expressed uh uh and very consistently expressed um would that not be a very compelling uh argument uh against um uh the the tax uh here uh well first of all i i i would say that the uh the discussions of the salt cap in in the context that we're talking about only started arising after the after the after the 16th amendment but in any event back to your your honor's uh question i don't believe that simply a congress over time expressing the importance in their view of having a deduction uh has any constitutional significance unless that reluctance by congress is constitutionally based and that is an important distinction here congress can do something for a very long time and then can change its mind just like congress for a very long time did not tax uh state bond interest and then in 1986 decided to tax state bond interest after two centuries of extremely consistent practice and in fact much of the material that the states cite in their brief supposedly in uh historically in support of a salt cap were actually uh folks arguing against the taxation of state bond interest which was actually the the issue that that was kind of percolating around the ratification of the 16th amendment and so that doesn't matter baker is constitutionally based yeah baker exactly um so it congress can do something extremely consistently for two centuries but unless the reason why it's doing that thing is because the constitution forbids it or requires it uh it's the historical practices the theory is that um um the the cap um exceeds the federal tax power by intruding into territory that was constitutionally reserved uh for the states i understand that to be a theory okay uh there's no there's no evidence in you know the constitutional debate uh you know well the evidence is that this is the evidence is that congress has recognized this 450 years congress has done various things over the last 150 years but mostly what it's done over the last you know since a permanent federal income tax has been in place after the 16th amendment was ratified was chip away at at what started out as a essentially plenary deduction for state and local taxes to the point where now we have a much smaller deduction that only affects a very small part of the population as opposed to previously when essentially every single u.s taxpayer enjoyed a salt deduction now this is a something that you know a few million folks in each state um are able to take advantage of given the you know various other provisions that either limit its application or the um the standard deduction which makes this deduction meaningless for for the large majority of uh uh taxpayers and then uh you know the exclusion of sales tax from um from the deduction uh at first entirely and now partially where in where in many states sales tax is the primary state tax that is paid as opposed to I mean there there are several states that don't levy state income taxes at all and there's several states that have very low property taxes so the idea that income and property taxes are particularly important or particularly significant or have any constitutional significance that may be true for the plaintiff states that we're talking about but that is certainly not true for the states the 50 states as a group and so congress in true has had some form of assault deduction on the books for 150 years it has one now it just has limited it in yet more one more way in among the many other ways that it has limited it over the last century all right thank you we'll hear the rebuttal Ms. Olson thank you your honor uh three points first very briefly on standing this case fells well with as the district court found this falls well within the uh the standing theory adopted by the wyoming case the injury here is direct because of the inherent link between the deduction and property values we're dealing with a deduction for real property taxes the cost of which are baked into the value of a home cap the deduction it pushes the value of the of the home down and real estate transfer tax are linked directly to that property value so it is a very very tight link between the the the the salt deduction cap and the the injury to the state on real estate transfer taxes and arguably a much tighter link even than was in the wyoming case we also have a separate theory of standing uh based on the inherent link between the the salt deduction cap and the and the cost of state and local taxes and regardless of what the the court thinks as to the merits of our theory for the purposes of standing you have to assume that our constitutional theory is correct and the inherent burden that a deduction a deduction cap places on the state's ability to impose to maintain uh and increase tax rates is sufficient for the purposes of standing because it imposes a structural injury on the states my second point going to the merits of the coercion theory the salt deduction is special and burdens the state's tax power a central part of the state's autonomy in ways that other kinds of coercive measures tax policies or otherwise simply do not infringe on the on the state powers it is sort of undisputed that the tax power is sort of a central part of the way that states conduct their sovereign affairs and and there's also no dispute in this case that capping the deduction makes it more difficult for the states to maintain their current tax policies in fact new york for example has not been able to enact any broad-based increases in in the income tax since the salt deduction has been put in place and that is is powerful evidence of of compulsion uh sim on par with if if maybe slightly distinguishable from what you had in nfib and the final point on history is that uh the constitution may be silent on the question of deductions but that's not a novel a novel issue in the question for the question of constitutional interpretation the the the constitution is also silent as to the conscription of of local of local officers what the supreme court has said is you look to history to understand how that how to understand the scope of the federal government's powers and that history is is overwhelming a few points of distinction uh my colleague mentions the the uh change various changes including the elimination of the for example the sales deduction uh the deduction for sales tax income and property taxes are are different and special these have been pillars of the state's mechanisms of generating revenue since colonial times they've and they would have been what congress was looking at and what the public was looking at at the time that the 16th amendment was adopted and those were and and that is pivotal for the purposes of understanding the history and why the deduction for property and income taxes is special and and that has been i think undisputably untouched and uncaps for over 150 years and just to distinguish baker very quickly we're gonna ask you how about bonds those have been around for a long time they have but they don't have quite the same pet they don't have quite the same pedigree they don't have the same inherent linkage to the state's ability to to raise revenue and a couple of their points about that legislation i've got to beg to differ with you on that but go ahead a couple other points of distinction for that case which is that the legislation uh at issue in baker affected basically the way that all bonds were done so both private uh private bonds and public bonds it wasn't a direct attack on the states and it by all accounts the effect of that of the change was relatively minor there just isn't the same evidence of overwhelming economic harm that that you have in this case thank you both uh for uh your verifying arguments the court will reserve a decision